2000 SD 99

**Alvin HOEKMAN and Bette Hoekman, Plaintiffs and Appellants,**

v.

**Timothy NELSON and Federal Express Corporation, Defendants and Appellees.**

No. 21270.

Supreme Court of South Dakota.

Argued May 31, 2000.

Decided July 26, 2000.

Chad W. Swenson, A. Russell Janklow, Mathew T. Tobin of Johnson, Heidepriem, Miner, Marlow and Janklow, Sioux Falls, South Dakota, Attorneys for plaintiffs and appellants.

Mark Haigh, Melissa C. Hinton of Davenport, Evans, Hurwitz and Smith, Sioux Falls, South Dakota, Attorneys for defendants and appellees.

GILBERTSON, Justice

[¶ 1.] In this personal injury action plaintiff Alvin Hoekman (Hoekman) appeals the circuit court's grant of summary judgment to defendant Federal Express Corp. (Federal Express), determining that while Federal Express owed a limited duty of care to him, Hoekman was contributorily negligent more than slight as a matter of law. We affirm on the basis that the duty of care of Federal Express in these circumstances extended only to ensure Hoekman's safe passage in front of the Federal Express vehicle.

## FACTS AND PROCEDURE

[¶ 2.] On October 17, 1995, Hoekman was injured as he crossed South Burr Street in Mitchell, South Dakota. An employee with the Iverson Max automobile dealership in Mitchell, he had walked across the street to the Quick Fill Gas Station, and was returning to Iverson Max. Instead of crossing at the designated intersection approximately 100 feet away which contained traffic lights, Hoekman crossed the two southbound lanes of traffic on Burr Street and was standing in or next to the left-hand, northbound lane of traffic. While Hoekman was attempting to cross in the middle of the street, a northbound Federal Express truck, driven by James Reinholt, approached and came to a stop, as he believed he would have hit Hoekman with his side mirror if he had not stopped.

[¶ 3.] Reinholt signaled to Hoekman by waving his hand, which Hoekman interpreted to mean "[g]o ahead and pass in front of my vehicle." Hoekman began jogging across the remainder of Burr Street, but after safely passing in front of the Federal Express truck, he was struck in the adjacent outside lane of traffic by an on-coming northbound vehicle driven by Timothy Nelson. At no time did Hoekman look to see if there were any on-coming vehicles in the lane outside of the Federal Express truck. Reinholt testified he never saw Nelson prior to the impact with Hoekman.

[¶ 4.] The collision propelled Hoekman's body approximately 10 feet from the point of impact. Hoekman sustained a fractured left hip, fractured right leg, injuries to his elbows and shoulders, and his left femur was completely severed from the ball socket.

[¶ 5.] Hoekman brought a personal injury action against both Federal Express and Nelson. The complaint against Nelson was eventually dismissed for lack of timely service. Federal Express filed a motion for summary judgment, claiming: (1) its driver owed no duty of care to Hoekman beyond its own lane of travel; (2) its driver had not been negligent in giving the hand signal; and, (3) Hoekman was contributorily negligent more than slight. After a hearing, the circuit court granted the summary judgment motion of Federal Express, finding that while Federal Express owed a duty of care to Hoekman as he passed in front of the truck, Hoekman had been contributorily negligent as a matter of law. Hoekman appeals, raising the following issue for our consideration:

Whether the circuit court erred in granting summary judgment to Federal Express.

## STANDARD OF REVIEW

[¶ 6.] Our standard for reviewing the grant or denial of a summary judgment motion in actions which involve tort claims is well settled. This Court stated in *Estate of Shuck v. Perkins County:*

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

[*Julson v. Federated Mutual Insurance Company*,] 1997 SD 43, ¶ 5, 562 N.W.2d 117, 119 (quoting *Ford v. Moore*, 1996 SD 112, ¶ 7, 552 N.W.2d 850, 852); *accord VerBouwens v. Hamm Wood Prods.*, 334 N.W.2d 874, 876 (S.D.1983). 1998 SD 32, ¶ 6, 577 N.W.2d 584, 586. Although we may not agree with the rationale of the circuit court, we will uphold summary judgment if there is a valid basis to do so. *St. Paul Fire & Marine Ins. v. Schilling*, 520 N.W.2d 884, 886 (S.D.1994) (citing *King v. John Hancock Mut. Life Ins. Co.*, 500 N.W.2d 619, 621 (S.D.1993)).

### ANALYSIS AND DECISION

[¶ 7.] *The Extent of the Duty of Federal Express Towards Hoekman.*[1]

 [¶ 8.] Whether a duty exists is typically a matter of law to be decided by the court, not a jury. *Tipton v. Town of Tabor*, 538 N.W.2d 783, 785 (S.D.1995). "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Tipton v. Town of Tabor*, 1997 SD 96, ¶ 12, 567 N.W.2d 351, 357 (citing W. Page Keeton, *et al.*, Prosser & Keeton on the Law of Torts § 53, at 356 (5th ed. 1984)); 57A Am.Jur.2d *Negligence* § 83. In order to maintain a negligence action and before a defendant can be found negligent, a plaintiff must prove a duty existed from the defendant to the plaintiff. *See Poelstra v. Basin Elec. Power Co-op.*, 1996 SD 36, ¶ 7, 545 N.W.2d 823, 825 (stating "[t]he existence of a duty owed by the defendant to the plaintiff . . . is elemental to a negligence action."); *Yankton Prod. Credit Ass'n. v. Jensen*, 416 N.W.2d 860, 864 (S.D.1987) (noting that "[t]he first requirement for an action in negligence is to establish that a duty exists. . . . "); *Barger for Wares v. Cox*, 372 N.W.2d 161, 167 (S.D.1985) (stating "the existence of a duty of care on the part of a defendant to a plaintiff is an essential element of a negligence action.").

[¶ 9.] The dispositive issue in this case is: does a genuine issue of material fact exist whether the Federal Express driver owed Hoekman a duty, and was thus negligent, in giving him a hand signal. Federal Express contends that it did not owe Hoekman a duty of care once he safely passed in front of the truck, that the driver's signal merely signified a yielding of its driver's right-of-way and that the signal could not have been reasonably interpreted as a representation that Hoekman could safely proceed across the entire remainder of the street. Hoekman argues Federal Express owed him a duty of care to assure his safety across the street after giving the hand signal, and whether Federal Express breached that duty is a question of fact for the jury to decide. He also argues the meaning of the Federal Express driver's hand signal is a question of fact to be

---

1. All parties to this case are adults. We express no opinion concerning this issue as to non-adults.

resolved by a jury.[2]

[¶ 10.] Whether a driver of a motor vehicle can be held to be negligent in giving this type of hand signal is an issue of first impression in South Dakota. Many courts have confronted this issue, and there is a distinct split of authority. *See* Joseph B. Conder, Annotation, *Motorist's Liability For Signaling Other Vehicle Or Pedestrian To Proceed, Or To Pass Signaling Vehicle*, 14 A.L.R.5th 193 (1993) (citing cases) [hereinafter *Conder*]. Almost all courts which have ruled on this issue agree that a driver has no affirmative duty to signal or warn another vehicle or pedestrian whether or not to proceed or pass. *See, e.g., Peka v. Boose*, 172 Mich.App. 139, 431 N.W.2d 399, 401 (1988); *Conder, supra* at 202. However, courts are divided on the issue of whether a driver's signal creates a jury question concerning negligence. *See generally Conder, supra.* Decisions holding that a driver giving a signal to another motorist or pedestrian can constitute negligence, rely upon the rationale stated by Justice Cardozo: "[i]t is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Nolde Brothers, Inc. v. Wray*, 221 Va. 25, 266 S.E.2d 882, 884 (1980) (citing *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 276 (1922)). Other courts rely on a similar principle found in the Restatement (Second) of Torts § 324A, which provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or third person upon the undertaking.

*See e.g., Lindsley v. Burke*, 189 Mich.App. 700, 474 N.W.2d 158, 160–61 (1991); *Askew v. Zeller*, 361 Pa.Super. 35, 521 A.2d 459, 461 (1987); *Cunningham v. National Service Industries, Inc.*, 174 Ga.App. 832, 331 S.E.2d 899, 902 (1985). While this Court has adopted the Restatement (Second) of Torts § 324A (*see Schoenwald v. Farmers Co-op. Ass'n*, 474 N.W.2d 519 (S.D.1991) and *Cuppy v. Bunch*, 88 S.D. 22, 214 N.W.2d 786 (1974)),[3] we have not applied it to facts and circumstances present in this case. Hoekman argues § 324A is applicable to these facts, claiming the Federal Express driver assumed a duty to act with reasonable care in giving the signal which applies to passage across all remaining lanes of traffic.

[¶ 11.] The circuit court determined that the driver of the Federal Express truck owed Hoekman a duty, but it only applied to his safe passage across the lane

---

2. At one point in his deposition, Hoekman claimed he assumed Reinholt was waving him across the street. At another point in his deposition Hoekman claimed he believed the signal to mean "[g]o ahead and pass in front of my vehicle." Reinholt claimed he threw up his hands as if to say "what are you going to do?" For purposes of review of a summary judgment we must construe the facts in a light most favorable to the non-moving party, Hoekman, that being he assumed Reinholt was waving him across the street.

3. In *Cuppy* we held that a motorist who volunteered to lead another motorist who the first knew to be intoxicated, owed no duty to persons in another car who were struck by the intoxicated motorist. In *Schoenwald* we held that an insurance company which did inspections of an elevator for purposes of setting premiums did not voluntarily assume a duty of due care to third parties concerning safety conditions at the elevator. We stated "[w]hile we held that the facts in *Cuppy* did not bring that case within the parameters of § 324A, we nonetheless accepted its applicability." *Schoenwald*, 474 N.W.2d at 521.

occupied by the truck, and not to the remaining lane of traffic which was to become the site of impact. We agree. While there is a split of authority on this issue, the more persuasive line of cases determine that a motorist signaling to a pedestrian or another motorist in a factual situation such as the one before us does no more than yield the right-of-way, rather than signal it is safe to proceed across another lane of traffic. *See Conder, supra* at 208 (citing cases).

[¶ 12.] In *Shank v. Government Employees Ins. Co.*, 390 So.2d 903 (La.Ct.App. 1980), the court held a driver's act of signaling the decedent plaintiff across the highway did not create a duty to ensure safe passage across the entire street. The decedent had attempted to cross a four-lane street, when a driver approached and stopped. The driver motioned to the decedent to move on, and the decedent safely passed in front of the driver's vehicle. When she began to cross the second lane of travel, she was struck by a second vehicle. As here, the plaintiff argued the decedent was entitled to rely on the driver's signal to cross the street. The appellate court, however, reversed the trial court's verdict in favor of the plaintiff and held that the signaling driver "did not owe decedent any duty to assure her safe passage across the remainder of the highway once she had crossed in front of his truck." *Id.* at 905. In reaching its decision it, "reject[ed] the proposition that an adult may step blindly onto a highway solely in reliance upon the signal of a third party," and held as a matter of law the driver was not negligent. *Id.*

[¶ 13.] Similarly, in *Government Employees Insurance Co. v. Thompson*, 351 So.2d 809 (La.Ct.App.1977), the court held that a motorist's signal to another motorist to pass in front of his truck meant only that—it was safe to pass only in front of his vehicle. The court stated:

> Mr. Decuir's signal was intended to give Mr. Thomas permission to pass in front of Mr. Decuir's stopped truck. Mr.

Thomas cannot be relieved thereby of his obligation to keep a proper lookout for oncoming traffic in other lanes of traffic. His misinterpretation of Mr. Decuir's courteous gesture cannot serve to render Mr. Decuir guilty of negligence proximately causing the ensuing accident.

*Id.* at 810.

[¶ 14.] Likewise, in *Dawson v. Griffin*, 249 Kan. 115, 816 P.2d 374 (1991), the court determined that while a truck driver's hand signal may have been unclear as to whether it was a guarantee of safety or simply a courteous gesture to indicate he was yielding the right-of-way, the signaled motorist nevertheless could not shift the blame to the truck driver. *Id.* at 379. The signaled driver "had a nondelegable duty to yield to oncoming traffic while making a left turn; and the only reasonable and safe thing to assume from a hand wave is, 'I won't hit you.'" *Id. See also Shank*, 390 So.2d at 904 (finding that a signal by a motor vehicle operator to a pedestrian is nothing more than a statement meaning "to move on."); *Nolde*, 266 S.E.2d at 884 (motorist's signal could be either a yielding of the right-of-way or an act of frustration, but could not have been reasonably interpreted that it was safe to cross); *Dix v. Spampinato*, 28 Md.App. 81, 344 A.2d 155, 170 (1975) (stating that the motorist's signal was a manifestation that as far as he was concerned the other party could proceed).

[¶ 15.] To require a signaling motorist to assume the responsibility to assure a pedestrian or another motorist that he or she will be safe from other oncoming traffic would place an unduly heavy burden on the signaler. This burden may be extreme and even impossible, since the signaler cannot control the actions of the other vehicles. There are also certain types of vehicles that contain blind spots, which preclude the yielding driver from seeing what is coming from behind. Reinholt testified there was such a blind spot on his

truck despite its mirrors. While Hoekman points out that Reinholt testified he could see down the sides of his truck with the use of his mirrors, Reinholt also testified that he could not see completely behind his vehicle.

[¶ 16.] There are those situations where a signaler in the driver's seat of his vehicle cannot be in a position to see right-lane traffic traveling in the same direction. *Nolde*, 266 S.E.2d at 884 (citing *Thompson*, 351 So.2d at 810; *Dix*, 344 A.2d at 169). *See also Wulf v. Rebbun*, 25 Wis.2d 499, 131 N.W.2d 303, 308 (1964) (Currie, C.J., concurring) (noting that a signaler could not be found to be negligent if evidence revealed he was not in a position to ascertain whether it was safe to proceed); *Kerfoot v. Waychoff*, 501 So.2d 588, 589 (Fla.1987) (noting that the signaling driver was in virtually an "impossible position to determine if the adjacent lane was clear of motor vehicles," and could not "determine the status of traffic in the outside northbound lane."); *Devine v. Cook*, 3 Utah 2d 134, 279 P.2d 1073, 1082 (1955) (concluding that the plaintiff was aware the signaling driver "was on the left side of the cab of his truck and therefore in no position to see, or to give her any assurance, that there was no traffic approaching upon the right of his truck from the rear.").

[¶ 17.] Hoekman contends that he believed Reinholt "knew the traffic situation across Burr Street when he signaled Alvin to cross." However, it is unreasonable to conclude that Reinholt, driving a Federal Express truck, could guarantee Hoekman's safety across the rest of Burr Street when he could not see behind the truck for on-coming traffic. Reinholt was in an almost impossible position to determine if the adjacent lane of Burr Street was clear of other vehicles. At the very least, Reinholt was in no better position to determine whether it was safe for Hoekman to proceed across the remaining lane

of travel than Hoekman was himself. *Dawson*, 816 P.2d at 378 (citing *Harris v. Kansas City Public Service Co.*, 132 Kan. 715, 297 P. 718 (1931)). Hoekman had an obligation to observe whether it would be safe for him to cross the remaining lane of traffic and to not "step blindly onto a highway solely in reliance upon the signal of a third party." *Shank*, 390 So.2d at 905. As the court stated in *Kerfoot*:

> [W]here the situation appears to be as much within the observation and estimation of the signaled driver as it is within that of the signaling one, and the signaled driver then proceeds without proper lookout and without exercising due care, it seems that the signaling driver will not be found guilty of the negligence, on the theory that in such case he is only signaling his intention to waive his right of way.

501 So.2d at 589 (citing A.G. Barnett, Annotation, *Duty and Liability as to Signaling Driver Approaching From Opposite Direction or on Intersecting Highway to Pass or Proceed*, 90 A.L.R.2d 1431, 1433 (1963)).

[¶ 18.] In this case, Reinholt was forced to stop because he thought he would hit Hoekman, who was standing in his lane of traffic or so close to it he may have been struck by the vehicle's mirror. Once he stopped, Reinholt had a duty to remain stopped until Hoekman had safely passed. However, once Hoekman had passed, Reinholt did not have a duty to ensure Hoekman's safe passage across the remaining lane of traffic, as he was not in a position to view all traffic coming from the rear. It was unreasonable for Hoekman to assume Reinholt's gesture meant it was safe to proceed across the remaining lane of traffic. Hoekman could have observed what was on-coming in the outside lane once he passed the Federal Express vehicle but by his own admission he failed to do so and jogged forward. Under the facts and circumstances in this case, Federal Express

did not owe a duty of care to ensure Hoekman's safety across the entire street. Thus, Hoekman's negligence claim against Federal Express fails, and the circuit court's grant of summary judgment is affirmed.[4]

[¶ 19.] MILLER, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.

4. The circuit court ruled in favor of Federal Express on the basis that Hoekman was comparatively or contributorily negligent more than slight as a matter of law. As we find no duty existed on the part of Federal Express beyond its own lane of travel, we do not reach the issue of comparative or contributory negligence.